(No. 39557.—

THOMAS J. DOUGLASS AND COMPANY *et al.*, Appellants, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JOHN SMALL Appellee.)

*Opinion filed May 23, 1966.—Rehearing denied September 21, 1966.*

VAN DUZER, GERSHON & JORDAN, of Chicago, (JOHN B. VAN DUZER and HORACE W. JORDAN, of counsel,) for appellants.

HUGH J. MCCARTHY and ROBERT MURPHY, both of Chicago, for appellee.

Mr. CHIEF JUSTICE KLINGBIEL delivered the opinion of the court:

A workmen's compensation award to John Small, for a total permanent disability, was affirmed by the circuit

court of Cook County. His employer, Thomas J. Douglass and Company, appeals, contending that the award should have only been for a specific loss of portions of two toes. The question is whether a neurosis from which he suffers can reasonably be attributed to a foot injury he sustained on the job.

The accident happened on February 8, 1963, at a construction site on the north side of Chicago. The claimant, a steam fitter, was helping to raise, with a chain hoist, a 20-foot length of 8-inch pipe, weighing about 125 lbs. The pipe slipped and dropped on his right foot. He was taken to a hospital, where it was found necessary to amputate portions of the second and third toes on that foot. He was discharged eight days later, went home where he stayed for three weeks, and then returned to work. In the accident the only physical impact of the pipe had been on the toes. No other part of his body was touched.

Upon going back to work the claimant noticed his hands were shaking. After four days of work he woke up sweating, chilly and nauseated. He was taken back to the hospital where he was found to have a temperature of 103. He was treated for an upper respiratory infection or pneumonia, and he also exhibited psychiatric symptoms. A neurologist and a psychiatrist were called in consultation, various tests were given, and tranquilizing medication was prescribed. After three weeks he was released and again returned to work.

On April 19, 1963, at the suggestion of his attorney, he consulted Dr. Kesert, another neurologist-psychiatrist. A series of tranquilizing drugs were prescribed from time to time, and on February 24, 1964, Dr. Kesert put him in a hospital where electric shock treatments were administered. He remained there for about a month, and did not look for work any more after being discharged.

Dr. Kesert was the only medical witness on behalf of the claimant. At the hearing before the arbitrator, held on

May 15, 1964, he testified to finding a sensory loss in the upper and lower extremities on the right side, and a tremor in the fingers of both hands. His diagnosis was traumatic neurosis, and he expressed the opinion that there was a direct causal connection between the injury to the toes and the neurosis. He testified further that in his opinion the claimant could not be gainfully employed and his condition was permanent. On cross-examination it appeared that the claimant told the doctor he had never before had similar symptoms. In other words the history which this doctor took from him was negative as far as any previous nervous or mental diseases of himself or members of his family were concerned.

A specialist in neurology who had been called in for consultation and treatment during claimant's second hospital confinement testified on the employer's behalf that he took a history. The history indicated that claimant's father had had a shaking condition, that the claimant had been discharged from the army in World War II for nervousness, and that some time before the foot injury he had been advised by the Mayo Clinic to have psychiatric evaluation. On review before the commission further testimony was introduced by the employer to the effect that after leaving the hospital the claimant did his work properly and was laid off only because of lack of work. A qualified neurosurgeon testified regarding an examination he made on November 23, 1964, and expressed the opinion that the claimant could work as a pipe fitter. The employer also offered into evidence the army records on Small which had been sent to the Industrial Commission by the Army Records Center in response to a *subpoena*. The commission refused to admit them, whereupon the employer made an offer to prove thereby that in 1944 Small was examined by a physician of the Medical Corps and a diagnosis was then made of a psychoneurosis, conversion and hysteria, and that as a result Small

was given a special discharge. The claimant offered no testimony on the review with regard to his condition at that time or his activities since the hearing before the arbitrator some six months before. The commission nevertheless affirmed the award, including a lifetime pension for total and permanent disability, and the circuit court in turn affirmed the decision of the commission.

Respondent insists that the claimant is entitled only to an award for the specific loss and the original temporary total disability, that all the rest of his care, treatment and disability has been for other areas of the body and from causes other than the accident. It is argued that the opinion of Dr. Kesert, the only one who found any connection, is worthy of little belief because he charged an exhorbitant fee for testifying in the case, and because it was based on the false premise that neither the claimant nor any of his family had ever had any previous symptoms of a similar nature. It is pointed out that the claimant worked for almost a year after he left the hospital, and that at the final hearings before the commission in January 1965 the uncontradicted opinion of respondent's medical witness was that the claimant could do the same kind of work at that time that he had been doing both before and after the accident.

Where an employee suffers an accident causing a total and permanent incapacity for work it is immaterial that this incapacity exists by reason of a mental disorder rather than a physical one, providing it resulted from the injury. (*United States Fuel Co.* v. *Industrial Com.* 313 Ill. 590.) But a claimant has the burden of establishing by a preponderance of the evidence that such disability did arise out of his employment. There can be no award where his condition results from a pre-existing disease and not from an injury. *Boland* v. *Industrial Com.* 34 Ill.2d 422.

In the case at bar it is evident that whether a causal relationship existed between the injury and claimant's mental condition, and whether the latter has rendered him

permanently disabled, depend principally upon the medical testimony. Dr. Kesert testified to the presence of such a causal connection and to the permanence of the condition, and one of the respondent's medical witnesses admitted on cross-examination that there might or could be a traumatic neurosis resulting from amputation of the toes. Although there was other evidence indicating the contrary, the evidence on the whole is such that different inferences could reasonably be drawn therefrom. The determination of these disputed questions of fact, as we have often pointed out, is primarily a function of the Industrial Commission. (*Gould National Batteries Inc.* v. *Ind. Com.* No. 39282, 214 N.E. (2d) 750; *Zion Industries Inc.* v. *Ind. Com.* 33 Ill.2d 314.) When the medical testimony is in dispute and the findings of the Industrial Commission cannot be said to be contrary to the manifest weight of the evidence, the decision of the commission will not be disturbed. (*Crouch-Walker Co.* v. *Ind. Com.* No. 39481, 215 N.E.2d 441.) Such is the case here.

Respondent also contends reversible error was committed when the commission refused to receive in evidence properly authenticated army records showing claimant had a long history of psychiatric trouble. We agree that the records were improperly excluded. It is not disputed that these are records kept by persons in public office which they are required to maintain in connection with the performance of their official duties. As such they are admissible in evidence and are evidence of those matters which are properly required to be maintained and recorded therein. (*People* v. *Chicago and North Western Ry. Co.* 28 Ill.2d 205; see, also, *Ivanhoe* v. *Buda Co.* 247 Ill. App. 336.) It appears however, that testimony on respondent's behalf showed a history substantially to the same effect, and that the evidence excluded would have been largely cumulative. Under these circumstances we think the error was harmless. (*Cf. People ex rel. Wangelin* v. *City of St. Louis,* 367 Ill. 57; *O'Rourke* v.

106

*Sproul,* 241 Ill. 576; *Ellison* v. *Sinclair Refining Co.* 41 Ill. App. 2d 436.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*