**STATE of Missouri ex rel. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Relator,**

v.

**The Honorable John R. RICKHOFF, Judge of the Circuit Court of the County of St. Louis, Missouri, Respondent.**

No. 35775.

Missouri Court of Appeals, St. Louis District, Division One.

April 9, 1974.

Motion for Rehearing or Transfer is Denied May 14, 1974.

Muehlenkamp & Murray, Harold P. Heitmann, Crestwood, for relator.

Robertson, Ely & Wieland, St. Louis, Chester B. Hayes, Ferguson, Donald R. Carmody, Clayton, for respondent and Ford Motor Co.

SIMEONE, Acting Chief Judge.

Original Writ of Prohibition seeking to restrain respondent from proceeding on his

sustaining a motion to produce under Rule 58.01, V.A.M.R.

On October 29, 1973, Relator, State Farm Mutual Automobile Insurance Company filed a petition for an original writ of prohibition in this court. The petition alleged that there was pending in the Circuit Court of St. Louis County, a certain cause, No. 321572, wherein Dr. Gaetano Valenza and his wife were plaintiffs and Ford Motor Company was the defendant. This cause of action arose out of an automobile collision between an automobile driven by Dr. Valenza and Mrs. Hilda Giganti's vehicle. Dr. Valenza and his wife sought damages against Ford alleging that the accident was the result of Ford's negligence in that the carburetor of the Ford driven by Mrs. Giganti was defective, malfunctioned, and thereby caused the collision between the Giganti and Valenza vehicles.

State Farm insured the Giganti's Ford. State Farm intervened in the Valenza suit as a party plaintiff seeking to recover its subrogation interest. State Farm also alleged that its damages were the result of Ford's negligent design and manufacture of the carburetor.

On September 21, 1973, the defendant, Ford Motor Company, filed a motion on State Farm "To Produce Carburetor For Examination." The motion urged the court to "order and direct State Farm Mutual Automobile Insurance Company, Intervenor-Plaintiff, to produce the carburetor of the Giganti automobile for inspection[1] by Ford Motor Company at the offices of Ford Motor Company in Dearborn, Michigan. . . ." The motion alleged as grounds therefor that the carburetor is "under the control" of State Farm and "in order to prepare its defense" to the claim, it is necessary that Ford "examine the carburetor, and for the *most effective* exami-

nation, it is necessary that this be done at the facilities of Ford Motor Company in Dearborn, Michigan, where the experts and the necessary facilities for such examination are located." The motion continued that the "carburetor nor its parts will be altered in any way [sic] by the examination, *unless necessary to a complete examination,* in which event a further order would be requested of the Court for whatever alteration might be required." (Emphasis supplied.)

On October 23, 1973, respondent sustained the motion of Ford and ordered State Farm "to produce [the] carburetor for examination." "Defendant is to bear all expenses of the crating or packaging, shipment and insurance of the carburetor and shall return the same within a period of 30 days from the date of the 25th of October, 1973."

Thereafter, on October 29, 1973, State Farm filed its petition in prohibition seeking to prohibit the respondent "to desist from any further proceeding requiring relator to deliver the said carburetor to FORD MOTOR COMPANY. . . ." We issued our preliminary writ on November 7, 1973.

Relator contends that the respondent-judge lacked "authority to order State Farm to Turn Over the Carburetor to the Custody of Ford Motor Company." The respondent contends otherwise.

The facts are simple, the issue narrow, but the legal resolution is complex.

The issue involves competing interests—the interests of a plaintiff to retain control and custody of a tangible object necessary to his case and the right of the defendant to prepare a defense. We deal here not with the right of defendant to inspect the object, but only with the narrow issue of whether plaintiff is to be com-

---

1. "The word 'inspection' has a broader meaning than just looking. The dictionary . . . defines 'inspect' as 'to examine carefully or critically, investigate and test officially . . . especially, a critical investigation or scrutiny'." Martin v. Reynolds Metals Corp., 297 F.2d 49, 57 (9th Cir. 1961) quoted in 8 Wright & Miller, Federal Practice and Procedure, § 2206, p. 611, fn. 10 (1970).

pelled to transfer custody and control of the carburetor by an unconditional order to the defendant for inspection in the defendant's facilities located out of state.

It is to be noted that the Motion to Produce the object is broadly worded. Ford seeks to produce the carburetor for inspection by Ford at its plant in Dearborn, Michigan, that "for the most effective examination" (it does not indicate that an effective examination can be made in the forum) it is necessary that this be done in Dearborn, and further it is to be noted the motion indicates that the carburetor will not be altered *unless necessary* to a complete examination in which event a further order would be requested.

We deal with the specific motion to produce and order issued by respondent before us.

Rule 58.01, which respondent by his return acknowledges is the Rule pursuant to which his order was made provides:

" . . . [A]ny party may move the court . . . for an order upon another party (1) to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects or tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 57.01(b) and which are in his possession, custody, or control. . . . The order shall specify the time, place, and manner of making the inspection and taking the copies and photographs and may prescribe such terms and conditions as are just."

The respondent urges that the passing of control from one party to another is subject to the discretion of the court, rather than the Rule being construed as providing that the trial court lacks power to transfer custody.

We believe that our preliminary writ should be made absolute because of reason and precedents.

In State ex rel. Emge v. Corcoran, 468 S.W.2d 724 (Mo.App.1971) this court confronted with the narrow issue of whether the Circuit Court has "authority to order a party to deliver its original books and records into the hands of its adversary," held that "produce" in Rule 58.01 is not a synonym of "turn over" or "give". "The rule contemplates that the possession, custody and control shall remain in the party producing, and the moving party shall have the opportunity to inspect. . . . The rule does not contemplate that the moving party shall receive the possession, custody or control of the thing produced. Respondent, throughout his brief, has treated the order entered as one of 'production and inspection.' It is not." Emge, supra, 468 S.W.2d at 725–726.

In State ex rel. Crawford v. Moody, 477 S.W.2d 438 (Mo.App.1972) the Springfield District granted a writ of prohibition to prohibit respondent judge from ordering defendants to remove and deliver to plaintiffs a certain pipe where one end of the pipe emerged through a concrete wall and the other entered an underground boiler and filter room through a wall of concrete blocks. The Springfield District said Rule 58.01 "nowhere provides that a court may require delivery of the possession of the object to the movant; neither does it extend authority to permit the moving party 'to remove and take possession of' the tangible thing sought for inspection. . . ." 477 S.W.2d at 440.

Respondent seeks to distinguish these two cases for a reinterpretation of Rule 58.01. But we believe these decisions are sound and the Rule as written does not contemplate the transfer of custody and possession of tangible objects to the adverse party. The Rule contemplates only that one party must "produce" in the sense of "bring forward, or to offer to view, or exhibit" rather than to "turn over" or "give."

A reconsideration of this interpretation is rather more suitable for the Rules

Committee of the Supreme Court. Under the present Rule an unfettered transfer of custody and control to the adversary is not contemplated.[2]

Our preliminary writ is made absolute.

WEIER and KELLY, JJ., concur.

---

2. It may be noted that Rule 34 of the Federal Rules of Civil Procedure as amended in 1970 is in some respects different than our Rule 58.01. Under Rule 34, the federal courts have allowed inspection of tangible objects but it is not clear whether the custody and possession was transferred to the moving party. Sladen v. Girltown, Inc., 425 F.2d 24, 25 (7th Cir. 1970)—a garment; Fisher v. United States Fidelity & Guaranty Company, 246 F.2d 344, 350 (7th Cir. 1957)—a motor vehicle; Quinn v. Chrysler Corporation, 35 F.R.D. 34, 35 (W.D.Pa.1964)—a handbrake assembly; City of Kingsport, Tennessee v. SCM Corporation, 352 F.Supp. 287 (E.D.Tenn.1972); See 4A Moore, Federal Practice, § 34.09 (1970) and 8 Wright and Miller, Federal Practice and Procedure, § 22.06, pp. 611–612 (1970).

Cf. the New York scheme under its CPLR 3102, 3103, 3104, 3120 and comments, 7B McKinney's Consolidated Laws of New York (1970) and Nasoff v. Hills Supermarket, Inc., 40 Misc.2d 417, 243 N.Y.S.2d 64, 65–66 (1963); Empire Mutual Ins. Co. v. Independent Fuel & Oil Co., 37 Misc.2d 905, 236 N.Y.S.2d 579, 580–581 (1962).