Louis ROBINSON, Employee,
Plaintiff-Respondent,

v.

KREY PACKING COMPANY, Employer and
Self-Insurer, Defendant-Appellant.

No. 33816.

St. Louis Court of Appeals,
Missouri.

March 22, 1971.

Motion for Rehearing or to Transfer to Supreme Court Denied April 26, 1971.

Application to Transfer Denied
June 14, 1971.

R. C. Reis, St. Louis, for defendant-appellant.

Harry J. Nichols, St. Louis, for plaintiff-respondent.

BRADY, Presiding Judge.

In this workmen's compensation proceeding the Referee found the claimant was permanently totally disabled, to be entitled to compensation therefor, and also awarded a pension for life. The Industrial Commission modified this award to hold the claimant's disability was 50 percent of the body as a whole. This award was affirmed by the circuit court.

From the transcript and evidence before us we believe the Commission could have found the following state of facts to exist. The claimant was operated for a hernia on the right side in 1959 and after a period of recuperation was examined by the employer's plant physician, Dr. Donley, who found him to be free of residual disability and permitted him to resume his job with the employer. His work necessitated lifting heavy boxes (up to one hundred pounds in weight) and he did so without any history of disability from this hernia operation.

The incident that is involved in the present claim occurred June 1, 1965, when the claimant was guiding a battery powered dolly in the employer's plant. The power driven wheel hit a hole in the floor causing the handle on the dolly to fly up and hit him in the left groin, knocking him to the floor and knocking the wind out of him. He testified he had pain "In the groin" at that time. In reply to a question asking him to be more specific as to the location of the pain he stated: "Well, it was —I immediately began to swell across the lower part of my stomach or groin. * * Was it more on one side than on the other? * * * Well, it was clear across." He reported the accident to his foreman that day. He was examined by Dr. Donley, the plant physician, who treated him almost the entire month of June. On July 6 Dr. Donley diagnosed "probably hernia left side and right side. It was my opinion that there had been a recurrence of hernia on both sides."

Although he was suffering considerable pain claimant continued working until his admission to the hospital under the direction of Dr. Donley on July 15. The next day he was operated for double hernia with cord transplant. He was discharged from the hospital July 23 and returned to work September 7 although both sides of his groin were tender. On October 17 he was readmitted to the hospital and operated the next day for hernia on the right side. The incision was made through the same scar as that left by the 1959 operation. He was discharged on the 26th of that same month and returned to work December 13. He continued working until March 21, 1966, when he was again operated at the hospital for recurrence of hernia on the right side. On the occasion of this operation the area of the hernia on the right side was strengthened by Mersilene gauze. This was necessary due to a congenital weakened condition at the right side of the groin. This gauze was used because there was no tissue left to sew together. Its purpose was to reinforce the right side of the groin so the claimant could return to light work. If the gauze breaks open the prognosis is very poor because the testimony was that the application of such material was " * * * about the last thing we do in conditions of this kind. You have done everything known to the profession. You can try another one. We try everything in order to relieve the man's condi-

tion. I don't know other than to try to put another piece of gauze in, see what he will have with that." He was dismissed from the hospital March 30, 1966, and returned to work May 23. Since that time the employee has been fully and gainfully employed doing light work and he does not lift anything weighing over twenty-five pounds.

The claimant's medical expert was a Dr. Mueller. His testimony as to this issue was that the claimant's condition was a permanent disability with a guarded prognosis because he was so limited as to what he could and could not do. He then gave the following testimony: "Q * * * Doctor, do you have an opinion based on a reasonable degree of medical certainty as to the competent producing cause of the complaints that man had of January 4th, 1968 and what complaints he has today? A The recurrent hernia condition of the right inguinal area. Q Doctor, in your opinion what was the competent producing cause of that condition, assuming those hypothetical facts? A Well, there is the previous operations the man has had. Also the condition of any strain that would exert, be exerted on the weakened tissues of that area. When he was hit or struck a blow with a metal handle that also contributes to any pain in this particular case. Q As far as being struck in the groin with the handle the man had no complaint from 1959 or 1960 up until the time he was struck with that handle, based upon that testimony, do you have an opinion based on a reasonable degree of medical certainty as to whether that was the competent producing cause and contributed or aggravated the condition so much to the extent it required the subsequent operations? A In this particular case, yes. Q What is that opinion? A That was a contributing cause to the hernia condition. Q You use the term contributing cause, could you tell us briefly in so far as medical terminology as to why you use that terminology? A In this particular case this man had a weakened tissue in that area and this was a direct blow

which is unusual. This is not a typical case. It's the direct blow in this particular case and the weakened tissue are what I think contributed to it."

Section 287.195, V.A.M.S., governs claims for hernia under the Workmen's Compensation Act of this state and requires the Commission to be satisfied as to proof of four elements: 1) that there was an accident or unusual strain resulting in hernia; 2) that the hernia appeared suddenly, accompanied by intense pain; 3) that the hernia immediately followed the accident or unusual strain; and 4) that the hernia did not exist prior to the accident or unusual strain resulting in the injury for which compensation is claimed.

There is no real dispute concerning the occurrence of the accident. The claimant's testimony in that regard is uncontradicted in any way. The employer does contend the blow on the left side of the groin did not result in the hernia on the right side. Dr. Mueller's testimony the blow contributed to cause the hernia on the right side completely refutes this contention. The employer then contends the hernia did not appear suddenly and was not accompanied by intense pain. To the contrary, the claimant testified that immediately after being struck he had pain across his groin and the only reasonable conclusion that can be drawn from a fair reading of the transcript was that the pain existed on both the left and right sides of the groin. His testimony also was that he noted swelling and had pain in both testicles the evening after the accident. This evidence is sufficient to sustain the second requirement of § 287.195, supra. The claimant continued in the care of the company physician for approximately a month following the accident and at the conclusion of that time the company physician diagnosed a hernia on the right side. We believe the fact that he was under treatment for over a month prior to this diagnosis constitutes competent evidence upon which the Commission could base its finding that

the hernia immediately followed the accident. The evidence that Dr. Donley found the claimant free of residual disability and permitted him to resume his employment and that he performed heavy labor from his recovery from the 1959 operation until the accident in 1965, together with the uncontradicted evidence by the claimant that he had no trouble prior to this time, constitutes substantial and competent evidence upon which the Commission could base its finding that the hernia did not exist prior to the accident.

■ The real thrust and burden of the employer's argument is that claimant's condition arises from a congenital weakness of his tissues in the groin area rather than an accident. But the fact that at the time of the 1965 accident claimant's groin was not normal but rather was in a state which rendered it easily susceptible to injury or aggravation does not foreclose claimant from his right to benefits for disability actually resulting from the 1965 accident. As is stated in Garrison v. Campbell "66" Exp., Inc., Mo.App., 297 S.W.2d 22, 1. c. 29: "For, in enactment of our Missouri Workmen's Compensation Law to afford protection to the weak as well as to the strong, the Legislature neither prescribed any standard of physical fitness to which an employee must conform nor predicated the right to benefits on any implied warranty of freedom from latent, dormant or quiescent disease or from congenital defect or weakness. Thus, ' "an actual aggravation of an existing infirmity caused by accident arising out of and in the course of the employment is compensable, even though the particular accident would have produced no such result in the case of a normal and healthy individual." ' (Citing numerous cases.)" Dr. Mueller's testimony was that the blow was a contributing cause to the hernia condition on the right side. Under such evidence we think there was ample competent and substantial evidence to support the award of the Commission.

■ The last allegation of error raised by the employer is that the award should not have been affirmed because, to quote from its brief, "there was evidence that clearly established that the employee had a disability before said accident, and under the law the employer is only liable for the degree or percentage of disability resulting from the last injury had there been no pre-existing disability." We cannot agree that there was any pre-existing disability. While both the medical experts agreed that claimant has an inherent weakness of the tissues of the groin, neither attempted to rate any disability that he might have had before the present accident. The refutation to the employer's contention is to be found in Wilhite v. Hurd, Mo., 411 S.W.2d 72, 1. c. 77 [3, 4], where it is stated: "The pre-existing permanent partial disability necessary to compensation from the Second Injury Fund under Section 287.220, V.A.M.S., relates to disability to work and means 'industrial disability' or loss of earning capacity, rather than physical impairment as such. Diederich v. Tri-City Ry., 219 Iowa 587, 258 N.W. 899, 902 [2]; 99 C.J.S. Workmen's Compensation § 296, p. 1035." In Wilhite as in the instant case the claimant had worked without difficulty at the same job as before his injury for some time. The employer is in a poor position to now claim pre-existing disability when its own doctor found the claimant free of residual disability following his operation in 1959. The employer is attempting to use the word "disability" as synonymous with "weakness in the groin area" or "physical impairment" (see Wilhite, supra). He cannot do so. Accordingly, the point is ruled against the employer.

■ The remaining issue in this case is raised by the claimant's contention that the Commission is required to consider the claimant's industrial disability as it exists without the prosthetic appliance. He contends the gauze is a "prosthetic appliance" just as well as any other device and it is only by reason of its existence that claimant is able to function even in the very limited manner he can. In this connection claimant relies on § 287.200, V.A.M.S. In

accordance with the provisions of that section claimant urges that the Commission should be ordered to reinstate the award of the Referee (permanent total disability), but hold the pension portion of the award in abeyance so long as claimant is gainfully employed.

Assuming arguendo the Mersilene gauze may be fairly defined as a prosthetic; i. e., "the surgical specialty concerned with the artificial replacement of missing parts" (Webster's Third New International Dictionary), we still cannot grant claimant's request. It is the exclusive province of the Commission to determine the matters of disability. Compare Pellitteri v. Blackmer & Post Pipe Co., 227 Mo.App. 145, 50 S.W. 2d 662.

The judgment is affirmed.

DOWD and WOLFE, JJ., concur.